Mr. Justice Walker delivered the opinion of the Court. This suit was brought to enjoin a judgment at law recovered by defendant Bizzell against complainant, to set aside the transfer and assignment of certain notes assigned by defendant Thompson to Bizzell, as being fraudulent, and to have the money collected thereon applied to the payment of certain debts which complainant alleges he is bound to pay as the security of Thompson. The first and most important question to be determined in this case is, can the complainant maintain his action upon the ground of a mere liability to pay, or must he show that an actual subsisting debt exists, ascertained and adjudged to be due? In other words, shall the complainant be permitted to complain that Thompson has transferred his property in fraud of the rights of creditors, until he has shown himself to be a creditor with such existing rights ? or is it sufficient for him to show that, upon the happening of a contingency, he may become such creditor ? The determination of this question is'paramount to all others. It is the foundation upon which the complainant must rest his claims to equitable relief,, and upon its determination, will mainly depend the final disposition of the case. In the case of Meux vs. Anthony, ante 411, this question was directly presented for consideration. It was there held that the right to be affected by such fraudulent transfer must be a “ definite ascertained right by the ordinary tribunals ■ appointed for that purpose” : that when a creditor comes into a court of equity to have a sale set aside as fraudulent and the property subjected to the payment of his debt, it is not only necessary that he should have a subsisting debt, but he must also show that such debt has been judicially ascertained to be due him, and that he has.failed by the ordinary process to obtain saitisfaction out of other unicumbered property of the debtor. The authorities referred to in that case are numerous and fully sustain the decision of the court; of the correctness of which, upon a review of the authorities there cited, we are fully satisfied. In addition to which may be added the case of Rhodes vs. Causein, 6 Rand,. 188, 1 Paige Rep. 186. 3 Paige Rep. 320 and 3 Yerger Rep. 81, in each of which the doctrine, as laid down in the case of Meux vs. Anthony, is distinctly and fully recognized. A brief review of the facts of this case will suffice to show whether or not it comes within the principle decided in the case of Meux vs. Anthony. It is alleged that complainant and one Blevins were the securities of defendant Thompson on a note executed to the Real Estate Bank for $3,000: that to secure them from loss by reason of their securityship, Thompson mortgaged to them certain property consisting of an improvement on public land, lands, lots, negroes, wagons, horses and cattle: that subsequently, Thompson, in fraud of their rights, absconded with and sold the si a.ves; and that he is fearful the residue of the mortgaged property will not be sufficient to secure him against loss, for the money he may be compelled to pay for Thompson. Complainant also states that he bought a negro girl of Thompson, the title to which is in dispute, and he is fearful that Thompson’s title was not good, and if so, he will sustain-loss. He also states that he drew a bill of exchange for $1,000, as matter of accommodation for Thompson which was endorsed by Cheatham and cashed by Thompson, that the bill was subsequently protested and that Cheatham and himself settled it by substituting their own notes on time. These are, substantially, the grounds of claim set forth in the bill, not one of which is predicated upon the existence of an actual subsisting debt (unless the substitution of complainant’s and Cheatham’s notes for the draft should raise an assumpsit to pay, of the truth of which there is no evidence,) much less is there prooí that these liabilities have in any manner been definitely determined to be due or that Thompson has not ample means to pay them. True, it is stated that the Real Estate Bank has recovered judgment against the complainant, but it is not pretended that one cent of it has been paid or that complainant is able to to pay any part of it. Suppose then complainant should be unable to pay, would he be allowed to collect a debt from Thompson which the bank could not collect from him ? Surely not. But then complainant does not attempt to account for the lands, wagons, horses and cattle, which were also mortgaged. He says he has fears that, after the negroes were taken, the residue of the property is not of sufficient value to secure him from loss. This however is mere matter of opinion; no estimate is made as to how far it will fall short of such indemnity, nor is any account given of rents or profits from the use of the lands. And it is upon these vague, uncertain, sweeping allegations and under these contingencies that he rests his claim to relief: that is, if he should be compelled to pay the bank debt, and if the mortgaged property should not be sufficient to indemnify him against loss, and if Thompson, at the time when all these are ascertained and happen, should not be able to pay, then unless this transfer to defendant Bizzell is set aside, and the notes applied to that purpose, he will sustain a loss. It is evident that the equitable claims of complainant are subject to each of these contingences: 1st. That Thompson is his debtor judicially ascertained. 2d. That he is unable to pay. 3d. That the mortgage security has been exhausted. Then and not before could complainant be heard to set aside a contract between Thompson and Bizzell, a third person. The contract as between them was valid, and even if a debt had been judicially ascertained to be due from Thompson to complainant, yet if Thompson had other property out of which to make the debt, complainant would have no right to meddle with Thompson and Bizzell’s contract; the fraud, if there be such, could not affect him or his rights. Admit moreover that Thompson, at this time, is utterly insolvent, yet by the time complainant pays the debt and that fact is judicially ascertained, Thompson may be able to pay. A court of chancery will never decree against the rights of a party upon a contingency which may never happen. This argument applies also to the other grounds. A mere apprehension that the title to the girl may not prove good furnishes no ground for the equitable relief sought. This question being settled there is no other question which could in any event change the final determination of the case. There was no ei’ror in the decree rendered by the Hempstead court in this case. Let the same be in all things affirmed with costs.